IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:18-CR-37-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHARLES ANTHONY WALKER, JR. | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's second motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 331).[1] The government responded in opposition. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is denied.

## STATEMENT OF THE CASE

Indictment filed December 4, 2018, charges defendant with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951; two counts of robbery and aiding and abetting, in violation of 18 U.S.C. §§ 1951 and 2; and using and carrying firearms during and in relation to a crime of violence, possession of firearms in furtherance of a crime of violence, and aiding and abetting, in violation of 18 U.S.C. § 924(c) and 2. The indictment describes the charges arising from an armed robbery of a Kay Jewelers store in Elizabeth City, North Carolina, on July 28, 2018, and a Kay Jewelers store in Garner, North Carolina, on October 11, 2018.

---

[1] The court will address by separate order defendant's pro se motion (DE 334) to appoint new counsel, filed July 17, 2020.

Defendant filed a first motion to suppress on December 18, 2019, seeking suppression and exclusion of all evidence obtained November 29, 2018, pursuant to a warrant authorizing search of an Infiniti G37 motor vehicle registered to defendant, allegedly in violation of the Fourth Amendment to the United States Constitution.[2] On June 4, 2020, after evidentiary hearing, adopting magistrate judge recommendation, the court denied the first motion to suppress. See United States v. Walker, No. 2:18-CR-37-FL-1, 2020 WL 2991458, at *1 (E.D.N.C. June 4, 2020) ("Walker I").[3]

Defendant filed the instant motion, on June 12, 2020, seeking to suppress any and all evidence obtained as a result of two orders issued by Pasquotank County Superior Court on September 6, 2018 (the "Pasquotank County order"), and Wake County Superior Court on October 18, 2018 (the "Wake County order") (collectively, the "orders"), which required disclosure to police of historical cellular cite information. Defendant relies upon copies of the orders; an application for the Pasquotank County order, filed by Kevin M. Burgess ("Burgess"), an officer of the Elizabeth City Police Department; and an application for the Wake County order by H.C. Miller ("Miller"), an officer of the Garner Police Department. The government filed its response in opposition on June 29, 2020, relying upon the same.

---

[2] Prior to filing the first motion to suppress, defendant filed an unrelated pro se motion to remove mail, phone, and visit restrictions placed upon him while detained, clarified by motion to vacate special administrative measures (DE 129), on May 14, 2019, and a June 12, 2019, motion (DE 136), to rescind protective order entered May 21, 2019. On September 13, 2019, the court denied defendant's motion to vacate restrictions placed on his communications and allowed defendant's motion to modified protective order such that defendant can possess his discovery material but not send it to others. On May 7, 2020, the court denied defendant's motion for reconsideration of the court's September 13, 2019, order. Defendant filed a pro se notice of interlocutory appeal of the court's May 7, 2020, order, and that appeal remains pending under court of appeals case number 20-4294.

[3] In the meantime, on June 6, 2020, the court granted defendant leave to file a second motion to suppress, on or before June 15, 2020.

2

## STATEMENT OF FACTS

The undisputed facts set forth in the documents attached to the instant motion include the following:

Approximately six weeks after the robbery of the Kay Jewelers in Elizabeth City, officer Burgess submitted an application on September 6, 2018, for an order pursuant to 18 U.S.C. § 2703(c) & (d), requiring "disclosure of historical cellular site information." (DE 331-1 at 5). The application recites that the Elizabeth City Police Department is conducting a criminal investigation involving the kidnapping and armed robbery of employees at the Kay Jewelers, described as follows:

> a. On Saturday, July 28, 2018, at approximately 8:30 p.m. Officers of the Elizabeth City Police Department[] were dispatched to 3850-N Conlon Way, Kay Jewelers in reference to an armed robbery.
>
> b. Once on the scene Officers witnessed two W/F's crying and in distress with one of the female in handcuffs.
>
> c. The suspects initially came into Kay Jewelers and were inquiring about the watch that one of them was wearing. It is believed this was to get a layout of the building. The two suspects then leave after several minutes.
>
> d. A third suspect entered Kay Jewelers a few minutes after the first two suspects left. The third suspect was inquiring about the difference between Leo Diamond's [sic] and Neil Lane Diamond's [sic]. Several minutes pass and he receives a phone call on his cell phone and stated "I'm looking at the ring right now". It is believed this was a notice to the first two suspects to enter and commit the robbery. The third suspect exists Kay Jewelers and slowly walks away not calling 911 for help.
>
> e. The three suspects were seen driving into Conlon Way parking lot in two separate vehicles together and leaving together after the robbery.

(Id. at 6-7).

The application seeks an order:

> directing **any and all providers of electronic service communications . . .** to disclose and furnish to the Elizabeth City Police Department, with the assistance of the Federal Bureau of Investigation, any and all transactional records pertaining to cellular telephone calls and direct connect information, SMS records and/or data

3

calls received by or transmitted from cellular towers, between **7:30 p.m. and 9:00 p.m. Eastern Standard Time on July 28 2018 or 11:30 p.m. and 1:00 a.m. Universe [sic] Time Coordinate, on July 28, 2018 through July 29, 2018**, that provide service in and around **3850 Conlon Way Elizabeth City NC 27909**. Also between **9:00 p.m. and 10:00 p.m. Eastern Standard Time on July 28, 2018 or 1:00 a.m. and 2:00 a.m. on July 29, 2018 Universe [sic] Time Coordinate** that provided service in and around **510 Virginia Rd, Edenton, NC 27932**.

The transactional records requested include[:] all transactional records (including, but not limited to cell site information, call detail records for the interconnect service and dispatch service, direct connect service, SMS text records, evolution data optimized (EVDO) information, per call measurement data (PCMD) and subscriber information, whether published or non-published[)] pertaining to any and all local, long distance, and direct connect calls, SMS texts, IP addresses, MAC addresses, EVDO and PCMD information originating, terminating or conducted through the above listed cell sites. In addition, the listed providers are requested to disclose cell site information relating to all numbers captured for ongoing, incoming and outgoing calls, upon oral or written request by agents of the Elizabeth City Police Department, and/or the Federal Bureau of Investigation.

(Id. at 5-6).

The application "submits that there are specific and articulable facts, as set forth . . . above to show that there are reasonable grounds to believe that the requested telecommunications records are relevant and material to the ongoing criminal investigation." (Id. at 7). "Specifically, the requested telecommunication records should yield information which corroborates witness information, and may identify potential new witnesses and/or targets." (Id.). "The requested information will therefore assist the Elizabeth City Police Department, and/or the Federal Bureau of Investigation in their investigation and provide evidence that unknown individuals violated provisions of N.C.G.S. 14-39 and N.C.G.S. 14-87." (Id.).

The Pasquotank County order entered the same date finds "based on specific and articulable facts, that there is PROBABLE CAUSE to believe that the requested information is relevant and material to an ongoing criminal investigation into possible violations of state and/or federal laws, including but not limited to KIDNAPPING N.C.G.S 14-39 and ARMED ROBBERY, N.C.G.S 14-87." (Id. at 2). Therefore, the Pasquotank County order directs

4

1. That **any and all providers of electronic service communications . . .** shall provide to the Elizabeth City Police Department, with the assistance of the Federal Bureau of Investigation, any and all transactional records pertaining to cellular telephone calls, SMS texts, evolution data optimized (EVDO) information, per call measurement data (PCMD) and direct connect information, received by or transmitted from cellular towers, between **7:30 p.m. and 9:00 p.m. Eastern Standard Time on July 28 2018 or 11:30 p.m. and 1:00 a.m. Universe [sic] Time Coordinate, on July 28, 2018 through July 29, 2018**, that provide service in and around **3850 Conlon Way Elizabeth City NC 27909**. Also between **9:00 p.m. and 10:00 p.m. Eastern Standard Time on July 28, 2018 or 1:00 a.m. and 2:00 a.m. on July 29, 2018 Universe [sic] Time Coordinate** that provided service in and around **510 Virginia Rd, Edenton, NC 27932**.

2. The transactional records shall include; all transactional records (including, but not limited to; cell site information, call detail records for the interconnect, direct connect and dispatch service, SMS text records, data detail records and subscriber information, whether published or nonpublished) pertaining to any and all calls, data service, SMS texts, and direct connect calls, terminating or conducted through the above listed cell sites. In addition, the listed providers shall disclose cell site information relating to all numbers captured for ongoing, incoming and outgoing calls, and call data detail records with cell site and sector information from July 28, 2018 for all numbers captured for ongoing, incoming and outgoing calls upon oral or written request of Officers of the Elizabeth City Police Department, and/or the Federal Bureau of Investigation. Subscriber information includes but is not limited to name, address, other phone numbers, ESN/IMEI/IMSI/MIN/MSID/MEID or other specific identifiers for phone(s), other accounts, date of birth, social security number, other persons associated with the account, date of service initiation, date of deactivation, dates and changes to service, method of payment, payment method account numbers and financial entity, and entire account history, for all telephone service for the target telephone(s)/email, and all call, SMS, IP addresses, MAC addresses, EVDO, and PCMD detail records, including cell site location data from. [sic]

(Id. at 2-3).

Following the October 11, 2018 robbery of the Kay Jewelers store in Garner, officer Miller submitted a similar application on October 18, 2018, for "disclosure of historical cellular site information." (DE 331-2 at 5). The application recites that Garner Police Department is conducting a criminal investigation involving the kidnapping and armed robbery of employees at Kay Jewelers, described as follows:

5

    a. On Saturday, October 11, 2018, at approximately 4:00 p.m. Officers of Garner Police Department[] were dispatched to 64 Eagle Wing Way, Kay Jewelers in reference to an armed robbery.

    b. Once on the scene Officers witnessed one W/F and one B/F crying and in distress.

    c. The suspects entered the store wearing orange safety vest. Both suspects brandished firearms and began demanding jewelry. Both suspects ordered the employees to remove jewelry from display cases.

    d. The suspects filled two large bags full of jewelry prior to UPS driver entering and interrupting the robbery.

    e. The suspects immediately exited the store fleeing on foot to the edge of the parking lot. The suspects are seen on video getting into a silver/grey sedan that was operated by a third suspect. The vehicle is seen leaving the area by US 70 Hwy.

(Id. at 6-7).

Similar to the application for the Pasquotank County order, the application for the Wake County order seeks cellular site information for a limited time frame, between 3:00 p.m. and 5:00 p.m. on October 11, 2018. The application seeks, and the Wake County order provides, the type of cellular site information identical to that provided in the Pasquotank Count order, based on the same recited findings of probable cause.

As further background, to place in context the facts pertaining to the instant motion, the court also incorporates herein for ease of reference the facts of subsequent events set forth in the court's June 4, 2020 order.

    On November 19, 2018, Special Agent Robertson completed an application for a warrant to search an Infiniti 037 vehicle with NC license plate number FHV-5325. [DE-243-1] at 1. In the accompanying affidavit, Special Agent Robertson wrote that Walker and his co-defendants conspired to commit armed robberies of two Kay Jewelers. Id. at 3. One robbery occurred on July 28, 2018 in Elizabeth City, NC, and the other occurred on October 11, 2018 in Garner, NC. Id. Special Agent Robertson asserts that the vehicle, a grey four-door sedan with tinted windows, was used in preparation for and commission of the October 11 robbery. Id. at 4.

    On October 7, 2018, four days before the robbery, an employee at a Verizon store near the Kay Jewelers noticed the vehicle acting suspiciously in the parking

6

lot. Id. at 5. The employee suspected that the vehicle was casing the Verizon store, so he sent photographs of the vehicle to police. Id. The license plate was visible in the photographs, and police identified Defendant as the registered owner of the car. Id. at 6.

On the day of the robbery, video surveillance cameras from several nearby stores captured the suspects leaving the Kay Jewelers at 4:03 p.m. Id. at 6. One of the suspects dropped a gun while fleeing, stopped, and ran back to retrieve the gun. Id. at 7. The suspects were recorded getting into a silver four-door sedan with tinted windows. Id. At 4:04 p.m., a camera recorded a silver four-door sedan with tinted windows driving much faster than other vehicles in the area; it made two left turns without stopping at stop signs and left the area. Id. at 6-7. Police believed that the vehicle depicted in the surveillance footage is the Infiniti that is the subject of the search warrant. Id.

Special Agent Robertson's affidavit further states that cell site data from the towers in the vicinity of the Kay Jewelers indicated that the phone number 336-470-4796 (hereinafter referred to as "x4796") was in the area at the approximate time of the robbery. Id. at 7. The phone number was also in contact with a number believed to belong to Christopher Wellington Brown, a robbery suspect, at the time of the robbery. Id at 11. The affidavit alleges that x4796 is associated with the vehicle in several ways. Id. at 7-11. First, a Car Fax report indicates that maintenance was performed on the vehicle in September and October 2018, and x4 796 was left as a contact number on both occasions. Id at 7-8. Additionally, in a recorded jail phone call between Tomika Lloyd, who was then an inmate at the Guilford County Jail, and x4796, Ms. Lloyd refers to the caller as "Preme." Id at 9. "Preme" is Walker's alias, and Walker is the registered owner of the car. Id Additionally, during one phone call, Walker states that he is with Malik, who is believed to be Malik Shawn Maynard, one of the robbery suspects. Id. Walker also states that he is on his way to New York and says "instant replay," to which Ms. Lloyd responds, "say less." Id.

On October 13, 2018, two days after the robbery, license plate readers in New York City captured the vehicle entering the city at 4: 16 p.m. and leaving at 9:31 p.m. Id. at 9-10. The vehicle was parked in the Diamond District at 6: 11 p.m. Id at 10. The affidavit concludes that the vehicle was used in preparation for and commission of the October 11 robbery, and there is probable cause to believe it was used to transport· proceeds of the robbery to New York. Id. at 11. Special Agent Robertson states that Walker may use the vehicle to store evidence of the crime. Id.

On November 19, 2018, United States Magistrate Judge Kimberly Swank signed a warrant authorizing a search of the vehicle. [DE-243-2] at 1. The search was executed on November 29, 2018, and officers seized a DEA Special Agent badge, a New Jersey turnpike ticket, glasses, and five cell phones from the car. Id. at 2.

Walker I, 2020 WL 2991458 *2-3.

In the meantime, on November 19, 2018, a criminal complaint was filed in the instant case charging that on July 28, 2018, defendant and his codefendants in this case committed Hobbs Act robbery on the Kay Jewelers in Elizabeth City. The affidavit by Robertson in support of the criminal complaint also describes the robbery of the Kay Jewelers in Garner, along with description of various cell phone records and information. (E.g., Compl. (DE 1) ¶¶ 11-16; 32-35). For example, it states:

> Cellular telephone number 336-324-5250 (hereafter referred to as x5250) was developed as a number of potential interest. . . . x5250 . . . appeared in returned tower data during the approximate time periods of both the robbery in Elizabeth City and vehicle abandonment in Edenton. Furthermore, x5250 and x5218 [attributed to co-defendant Joey Wayne Chambers, Jr. ("Chambers")] appeared to have contacts of varying durations during the relevant time period of the robbery in Elizabeth City and vehicle abandonment in Edenton. Additional investigation into x5250 revealed that it was listed to CHARLES WALKER on a 10/5/2018 pawn ticket from National Jewelry and Pawn #7, located in Raleigh, NC. A pawn ticket is a document generated when an item is pawned and contains specific information regarding the item pawned and the person who pawned it.

(Id. ¶ 14).

## COURT'S DISCUSSION

Defendant moves to suppress pursuant to the Fourth Amendment all historical cell phone records obtained by the orders, which he describes as "so-called 'tower dump' order[s]," or orders that "permit[] the government to collect the phone numbers and relative location (known as cell-site location information, or 'CSLI') of all cellular device users within a particular radius." (Def's Mot. (DE 331) at 3). Because information obtained by officers "was used to identify the defendant's phone and its location," defendant's argument "focus[es] on CSLI without giving up the right to challenge any other evidence obtained pursuant to the orders." (Id. at 4).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and it states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

8

Case 2:18-cr-00037-FL   Document 335   Filed 07/20/20   Page 8 of 15

describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause "exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in a particular place." United States v. Doyle, 650 F.3d 460, 471 (4th Cir. 2011) (quotations omitted).

In this case, it is undisputed that the orders did not constitute warrants satisfying Fourth Amendment requirements. Rather, they are based upon a finding that there are "reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation," pursuant to 18 U.S.C. § 2703(d). In particular, that statute provides in pertinent part:

> (c) **Records concerning electronic communication service or remote computing service.** --(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity-- . . . . . obtains a court order for such disclosure under subsection (d) of this section; . . .
>
> (d) **Requirements for court order.** --A court order for disclosure under subsection . . . (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are <u>reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation</u>.

18 U.S.C. § 2703(c) & (d) (emphasis added).

The showing required to obtain an order divulging cell phone records under § 2703 "falls well short of the probable cause required for a warrant." Carpenter v. United States, 138 S. Ct. 2206, 2221 (2018). Accordingly, the issue presented by this case is whether defendant had any Fourth Amendment interest in the CSLI obtained as a result of the orders. See id. In order to put this issue in perspective, it is necessary to address first and foremost the Supreme Court's opinion in Carpenter, whose holding and reasoning defendant contends applies to his favor in this case.

In Carpenter, a decision entered June 22, 2018, the Supreme Court addressed the constitutionality of a certain type of order issued under § 2703(d) to obtain "historical cell phone records that provide a comprehensive chronicle of [a] user's past movements."  138 S.Ct. at 2211. In particular, the § 2703(d) orders at issue in Carpenter authorized the government "to obtain cell phone records for [a single criminal defendant] and several other suspects." Id. at 2212.  The orders directed the defendant's wireless carriers "to disclose cell/site sector information for [the defendant's] telephone at call origination and call termination for incoming and outgoing calls during the four-month period when [a] string of robberies occurred." Id. (internal quotations omitted). "The first order sought 152 days of cell-site records . . . which produced records spanning 127 days." Id. "The second order requested seven days of CSLI . . . , which produced two days of records." Id. "Altogether the Government obtained 12,898 location points cataloging [the defendant's] movements – an average of 101 data points per day." Id.

In determining whether the orders for production of CSLI triggered the defendant's Fourth Amendment rights, the court recognized that "requests for cell-site records lie at the intersection of two lines of cases" id. at 2214: 1) those that address "a person's expectation of privacy in his physical location and movements," such as United States v. Jones, 565 U.S. 400 (2012), finding a search unconstitutional where "FBI agents installed a GPS tracking device on Jones's vehicle and remotely monitored the vehicle's movements for 28 days"; and 2) those where "the Court has drawn a line between what a person keeps to himself and what he shares with others," such as Smith v. Maryland, 442 U.S. 735, 743-44 (1979), and United States v. Miller, 425 U.S. 435, 443 (1976),  where the court did not attach a Fourth Amendment interest in searches of bank records and dialed phone number records.

10

Considering these two lines of cases, the court in Carpenter held that "[t]he location information obtained from [the defendant's] wireless carriers was the product of a search," which requires under the Fourth Amendment "a warrant supported by probable cause." Id. at 2213, 2217. The court reasoned that that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." Id. at 2217. "Much like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled." Id. at 2216.

The court further explained that that "individuals have a reasonable expectation of privacy in the whole of their physical movements." Id. at 2217. "Prior to the digital age, law enforcement might have pursued a suspect for a brief stretch, but doing so for any extended period of time was difficult and costly and therefore rarely undertaken." Id. (quotations omitted). "For that reason, society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period." Id. (emphasis added). The court observed:

> Allowing government access to cell-site records contravenes that expectation. Although such records are generated for commercial purposes, that distinction does not negate [the defendant's] anticipation of privacy in his physical location. Mapping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations.

Id. (emphasis added; quotations omitted).

The Supreme Court expressly limited its holding to the facts of that case, noting: "Our decision today is a narrow one." Id. at 2220. "We do not express a view on matters not before us: real-time CSLI or 'tower dumps' (a download of information on all the devices that connected to a particular cell site during a particular interval)." Id. (emphasis added). The court further

11

emphasized "this case is not about 'using a phone' or a person's movement at a particular time." Id. (emphasis added). "It is about a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." Id. "Such a chronicle," the court reasoned, "implicates privacy concerns far beyond those considered in Smith and Miller," id. (citing 442 U.S. at 743 and 425 U.S. at 443). The court noted, "We do not disturb the application of Smith and Miller or call into question conventional surveillance techniques and tools, such as security cameras." Id.

Based on the foregoing, the first premise in defendant's argument is flawed. The holding of Carpenter does not apply with equal force "in the context of a tower dump request." (Def's Mot. (DE 331) at 7). Carpenter expressly does not provide a holding on the constitutionality of "tower dumps." 138 S.Ct. at 2220. Indeed, the Supreme Court even refrained from "express[ing] a view" on that topic. Id.

Defendant's second suggested premise, that the reasoning of Carpenter, or the authorities upon which relies, renders a tower dump order unconstitutional, also is flawed. Carpenter is instructively distinguishable in several key respects. The orders in Carpenter provided a "comprehensive chronical of [a] user's past movements" during a four month period, seeking records spanning from seven to 152 days. Id. at 2211-2212. The court contrasted police pursuit of a suspect "for a brief stretch" compared with "a very long period" where agents "secretly monitor and catalogue every single movement of an individual[,]" "[m]aping a cell phone's location over the course of 127 days provid[ing] an all encompassing record of the holder's whereabouts." Id. at 2217.

Here, the orders capture CLSI not for one targeted individual for an extended time, chronicling that individual's private life for days, but rather capture CLSI for a particular place at

12

a limited time.  In this manner, the privacy concerns underpinning the court's holding in Carpenter do not come into play here, where the search for data focuses not on "the whole of [an individual's] physical movements" but rather on the data that was left behind at a particular time and place by virtue of cell phone tower locations.  Id. at 2217.  Instead, the CLSI tower dump information gathered here is more akin to "conventional surveillance techniques" and tools, such as security cameras and fingerprint collections, which capture data from every individual who came into contact with the crime scene in the manner revealed by the technology at issue.  Id. at 2220.

In light of the significant differences between a tower dump CLSI and long term CSLI targeted at the whole of an individual's movements, as highlighted by the court's decision in Carpenter, the court finds no basis for attaching a Fourth Amendment interest to tower dump CLSI. Therefore, there was no Fourth Amendment violation when officers obtained the orders in this case pursuant to statutory authority under 18 U.S.C. § 2703(d).

In addition, and in the alternative, the good faith exception to the exclusionary rule applies. "The exclusionary rule's sole purpose is to deter future Fourth Amendment violations."  United States v. Chavez, 894 F.3d 593, 608 (4th Cir. 2018) (quotations omitted).  "Thus, when investigators act with an objectively reasonable good-faith belief that their conduct is lawful, the exclusionary rule will not apply."  Id. (quotations omitted).  "Objectively reasonable good faith includes searches conducted in reasonable reliance on subsequently invalidated statutes."  Id. (quotations omitted).

Here, officers relied upon § 2703(d) to obtain the tower dump CSLI through the Pasquotank County and Wake County orders. (See, e.g., DE 331-1 at 5-7; DE 331-2 at 5-7).  At the time they sought the orders, and even today, neither Carpenter nor any other case has held that use of a § 2703(d) order to obtain tower dump CSLI is unconstitutional.  Indeed, as discussed above, the

13

Supreme Court expressly declined to reach the question of constitutionality of such orders. In addition, the United States Court of Appeals for the Fourth Circuit has not addressed the issue. Therefore, officers reasonably relied upon the authority in § 2703(d) to obtain the orders.

Defendant argues that the text of § 2703 does not authorize a search for tower dump CSLI, because the statute authorizes only a court order for records pertaining to "a subscriber to or customer" of a cell phone provider. (Def's Mot. (DE 331) at 22 (quoting 18 U.S.C. § 2703(c)(1)). Defendant argues that because the statute is phrased in the singular, it does not allow orders for multiple subscribers in the form of tower dumps. However, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise -- words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1. Accordingly, where § 2703 authorizes an order for records pertaining to "a subscriber," it also authorizes an order for records pertaining to multiple subscribers. See id.; see, e.g., United States v. Pembrook, 876 F.3d 812, 816 (6th Cir. 2017) (upholding "tower dump" obtained under § 2703(d)) vacated on other grounds, 138 S.Ct. 2676 (2018).

Defendant also argues that information sought and provided in the orders was not "relevant and material" to the ongoing criminal investigation. Instead, defendant argues that the applications were merely a "fishing expedition to see what may turn up." (Def's Mot. (DE 331) at 22). The court disagrees. The applications here provided "specific and articulable facts showing that there are reasonable grounds to believe that" the CSLI records sought were "relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Both applications described specifically the time and place of the robberies, and the records sought were limited, with one exception,[4] to

---

[4] Officers did not sufficiently describe in the application for the Elizabeth City order the significance of the CSLI for the location at 510 Virginia Rd., Edenton, NC 27932, (DE 331 at 5), which was later detailed in the criminal complaint in this case. (See Compl. (DE 1) ¶ 6). This omission is not fatal to the orders as a whole. Where the complaint later detailed the basis for obtaining CSLI for this location, officers acted in good faith in seeking it.

14

the same date and time frames. (DE 331-1 at 6-7; DE 331-2 at 6-7). The application for the Pasquotank Order also references use of a cell phone by one suspect. (DE 331-1 at 7). Both applications further state that "the requested telecommunication records should yield information which corroborates witness information, and may identify potential new witness and/or targets." (DE 331-1 at 7; DE 331-2 at 7). In the context of robberies where the identities of the suspects were unknown, and where suspects arrived and left in a group by vehicle, the officers provided sufficient facts showing the relevance of the requested cell phone records to the investigation.

In sum, officers reasonably relied upon the authority of § 2703(d) and the Pasquotank County and Wake County orders in obtaining historical cell cite records in this case. Therefore, the good faith exception to the exclusionary rule applies.

## CONCLUSION

Based on the foregoing, defendant's second motion to suppress (DE 331) is DENIED.

SO ORDERED, this the 20th day of July, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge